UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
BROCK CAPITAL GROUP LLC and
BROCK SECURITIES LLC,

                Plaintiffs,

      - against –

SAAD SIDDIQUI and 9626751
CANADA INC. o/a SHOP BONSAI,

            Defendants.

------------------------------X

**MEMORANDUM AND ORDER**

21 Civ. 2070 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

      Plaintiffs Brock Capital Group LLC and Brock Securities LLC ("plaintiffs" or "Brock") brought this action alleging fraud and breach of contract against Saad Siddiqui ("Saad") and 9626751 Canada Inc., operating as Shop Bonsai (collectively, "defendants" or "Bonsai").  Before the Court is defendants' motion to dismiss the fraud claim and to strike certain portions of the Second Amended Complaint ("SAC").  For the reasons stated below, we grant defendants' motion to dismiss the fraud claim in its entirety and the motion to strike in part.

**BACKGROUND[1]**

---

[1]    The following facts, which are drawn from the Second Amended Complaint, are accepted as true for purposes of the Court's ruling on Bonsai's motion to dismiss and motion to strike.  Where noted, we have also drawn facts from declarations submitted along with the papers in this motion.  The Court draws all reasonable inferences in Brock's favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).  We only summarize the relevant facts that are necessary to resolve these motions.

I.   **Negotiations Regarding Bonsai's Engagement Agreement**

Brock is self-described as "an old-line, conservative investment bank," located in New York that "is engaged in the business of providing strategic business advice and investment banking services to clients." SAC (ECF No. 44) ¶¶ 13, 17. Brock also describes itself as "an unusual firm, in that many of its members joined it after distinguished careers at the highest levels of some of the most prestigious financial, government and academic institutions in the U.S." Id. ¶ 17.

Bonsai is a Canadian corporation that was founded by Saad Siddiqui, who resides in Toronto and functions as Bonsai's Chief Executive Officer. Id. ¶¶ 3, 4. Saad founded Bonsai with the assistance of investments from "friends and family." Id. ¶ 16. Saad's father, Laiq Siddiqui ("Laiq"), also resides in Toronto and serves on the board of Bonsai.[2] Id. ¶¶ 7, 14.

On January 10, 2018, Saad approached Brock "about the possibility of Brock giving Bonsai strategic business advice, raising capital to support Bonsai's business, or finding a buyer for the company." Id. ¶ 13. At that time, Saad was 19 years old with "almost no business experience." Id. ¶ 16. During the course of "one of [the] early in-person conversations with Charles L.

---

[2]   Laiq is not a party to this action.

Brock," Brock's Chief Executive Officer, Saad purportedly represented "that Laiq was formerly the head of investment banking in Canada for Citibank." Id. ¶ 14. According to Brock, "Laiq's supposed status as a former senior executive for Citibank in Canada was critical to Brock's decision to take on Bonsai as an investment banking client," and the bank would not have done so "absent Saad's representations." Id. ¶¶ 17, 18. Brock further alleges that it considered Laiq's purported work experience and investment in Bonsai as critical because: it indicated that Laiq was "vouching for the soundness of Bonsai's management and . . . business plan;" it provided Brock with "an opportunity to establish a relationship with one of Toronto's most accomplished businessmen;" and Brock believed Laiq "would assist his son in the negotiation of the engagement agreement between Brock and Bonsai," which would "proceed smoothly and professionally." Id. ¶ 18.

"[N]egotiations between the parties of the engagement agreement (the 'Contract') were in fact protracted," and the Contract was not signed until approximately two years after Saad first initiated conversations with Brock. Id. ¶ 19. After the Contract was signed, Saad arranged a Zoom call between Brock and Bonsai representatives, which included Laiq. Id. ¶ 20. Prior to the call, Saad sent an email to Brock that included a description

of Laiq's work experience as having held "various positions at Citibank Canada including EVP and VP Risk." Id. Despite Laiq's participation on the call, there was no discussion of his work experience. Id. ¶ 21.

## II.  Procedural Posture and Pre-Litigation Conversations

On February 19, 2021, following a breakdown between Brock and Bonsai related to performance under the Contract, Brock's counsel Francis Carling called one of Bonsai's lawyer, Lewis Murphy. See Declaration of Lewis Murphy ("Murphy Decl.") ¶ 6 (ECF No. 63). During the call, Carling informed Murphy that he intended to file a lawsuit on behalf of Brock and was "only calling with jurisdictional questions about where he should file his breach of contract lawsuit." Id. ¶ 9.  Carling also asked whether Bonsai would agree to FINRA jurisdiction and announced his intent to "file in the Southern District." Id. ¶¶ 10, 11.  Carling further told Murphy to "let [Carling] know" if Saad "ha[d] something else on his mind." Id. ¶ 15.

Following this call, Carling emailed Murphy to inform him that Carling planned to "proceed to file an action in the Southern District."  Declaration of Jason M. Sobel in Support of Defendants' Motion to Strike ("First Sobel Decl.") Ex. 1 (ECF No. 55-1).  In response, Murphy scheduled a call on March 3, 2021, between

-4-

Carling, Murphy, and Jason Sobel, another of Bonsai's lawyers. See id. Carling alleges that during the course of the call, which Bonsai's counsel maintain was a settlement conversation, see Second Declaration of Jason Sobel in Support of Defendants' Motion to Strike ("Second Sobel Decl.") ¶ 10 (ECF No. 64), Murphy Decl. ¶ 27, Bonsai's counsel represented that Bonsai was considering bringing a counterclaim for fraud in the inducement.  SAC ¶¶ 76-78.  On March 11, 2021, Brock filed a complaint, naming only Shop Bonsai, the corporate defendant.  See ECF No. 6.  On April 14, 2021, Shop Bonsai filed an answer and counterclaims against Brock. See ECF No. 12.  Following preliminary discovery, on September 30, 2021, Brock filed an amended complaint naming both Saad and Shop Bonsai as defendants.  See ECF No. 29.  On January 6, 2022, Brock filed a Second Amended Complaint.  See ECF No. 44.

On January 19, 2022, Bonsai filed a request for a pre-motion conference, see ECF No. 46, which Brock opposed on January 20, 2022, see ECF No. 47.  On January 21, 2022, the Court granted Bonsai leave to file its motion to dismiss without the need for a conference.  See ECF No. 48.  On February 16, 2022, Bonsai filed its motion to dismiss and to strike certain allegations in the Second Amended Complaint.  See ECF No. 53.

-5-

## STANDARD OF REVIEW

### I.    Rule 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," and it must "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

### II.   Rule 9(b)

Claims alleging fraud are subject to a heightened pleading standard.  "[A] party [alleging fraud] must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To satisfy that requirement, a plaintiff must identify the statements in question, the speaker, state when

they were issued, and explain why the statements in question were fraudulent.  See Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1128 (2d Cir. 1994).  The complaint must also "allege facts that give rise to a strong inference of fraudulent intent."  Id. Conclusory allegations of fraudulent conduct are insufficient and will be dismissed under Rule 9(b).  See Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir. 1971).

### III. Rule 12(f)

Rule 12(f) provides that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  "Federal courts have discretion in deciding whether to grant motions to strike." Allocco v. Dow Jones & Co., No. 02 Civ. 1029 (LMM), 2002 WL 1484400, at *1 (S.D.N.Y. July 10, 2002).  However, motions to strike "are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute."  Smith v. AVSC Int'l, Inc., 148 F. Supp. 2d 302, 317 (S.D.N.Y. 2002). "To prevail on a Rule 12(f) motion to strike, a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant."  Acco, Ltd. v.

Rich Kids Jean Corp., No. 15 Civ. 7425 (JSR), 2016 WL 3144053, at *1 (S.D.N.Y. Apr. 11, 2016) (collecting cases).

## DISCUSSION

### I.   Motion to Dismiss

Bonsai moves to dismiss Brock's allegations of fraudulent inducement premised on alleged misrepresentations by Saad regarding his father Laiq's employment history.  In order to adequately plead a claim of fraudulent inducement under New York law, a plaintiff must show: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001).  Bonsai argues that, even assuming Saad misrepresented his father's employment history, Brock has failed to show reasonable reliance, the fraud claim is duplicative of Brock's breach of contract claim, and Brock has failed to meet the Rule 9(b) pleading standard.

### a. *Reasonable Reliance*

Bonsai's first argument is that Brock has failed to plausibly allege reasonable reliance upon the purported misstatements that allegedly induced Brock to enter the Contract.  See Memorandum of

-8-

Law in Support of Defendants' Motion to Dismiss and Motion to Strike ("Mot.") at 5-8 (ECF No. 54).  At the outset, analysis of the reasonableness of reliance is properly considered at the motion to dismiss stage because the standard is an objective one.  See, e.g., Harsco Corp. v. Segui, 91 F.3d 337, 341-347 (2d Cir. 1996); Phoenix Cos., Inc. v. Concentrix Ins. Admin. Solutions Corp., 554 F. Supp. 3d 568, 595-98 (S.D.N.Y. 2021); Terra Secs. Asa Konkursbo v. Citigroup, Inc., 740 F. Supp. 2d 441, 449 (S.D.N.Y. 2010).  "In assessing the reasonableness of a plaintiff's alleged reliance, we consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them."  Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc., 343 F.3d 189, 195 (2d Cir. 2003).  Additionally, where a party has "the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations."  Stuart Silver Assocs., Inc. v. Baco Dev. Corp., 665 N.Y.S.2d 415, 417 (N.Y. App. Div. 1997).  "While the law does not require that a defrauded party go to the ends of the earth to discover the falsity of a statement, patent foolishness is not excused."  Banque Franco-Hellenique de Com. Int'l et Mar.,

S.A. v. Christophides, 106 F.3d 22, 26 (2d Cir. 1997).

Here, Brock alleges that Saad made claims regarding "Laiq's supposed status as a former senior executive for Citibank in Canada" that were critical to Brock's decision to enter into negotiations, and ultimately a contract, with Bonsai. Specifically, the SAC alleges that Saad told Charles L. Brock at an early meeting that Laiq was "an initial investor in, and board member of, Bonsai, [and] . . . was formerly the head of investment banking in Canada for Citibank."[3]   SAC ¶ 14.   Brock alleges that it relied on this singular statement to conclude that: (1) Laiq's endorsement of his son's business by investing in it and joining its board was an indication of the "soundness of Bonsai's management and of its business plan;" (2) Brock had an opportunity to establish a relationship "with one of Toronto's most accomplished businessmen;" and (3) Laiq's business background would aid in the negotiation of an engagement agreement and therefore the "negotiations would proceed smoothly and professionally."   SAC ¶ 18.

Although Bonsai does not concede that Saad misrepresented

---

[3]   Brock also claims that Saad made another false statement regarding Laiq's employment history following the signing of the Contract, which was "intended by him to induce Brock to take Bonsai on as a client."  SAC ¶ 21.  Given that Brock had already signed an engagement agreement with Bonsai when the statement was made, it obviously would not have induced Brock.

Laiq's work history, see, e.g., Mot. at 2, resolution of that issue is not necessary.  Even assuming arguendo that Saad misrepresented his father's past work experience, Brock's presumptions based on Saad's representation are indefensible and do not support its claim of reliance.  Nor does the SAC allege any facts from which to infer that Saad "kn[ew] or ha[d] reason to know that [Brock] regard[ed] or [wa]s likely to regard the matter as important in determining [its] choice of action."  Chase Manhattan Bank v. Motorola, Inc., 184 F. Supp. 2d 384, 394 (S.D.N.Y. 2002).  In order to establish reliance under New York law, Brock must "establish not only that [it] actually relied on the misrepresentation, but that this reliance was reasonable or justifiable."  Daly v. Kochanowicz, 884 N.Y.S.2d 144, 152 (N.Y. App. Div. 2009).

As will be demonstrated below, none of Brock's claims of reliance are objectively justifiable or reasonable.[4]

First, while Saad may have intended to mitigate his youth and inexperience by mentioning his father's work history, it is more plausible to conclude that Laiq had invested in Bonsai based on a paternal desire to support his son, rather than as Brock asserts

---

[4]     While only briefly pressed, defendants also assert that even if Saad made the alleged statement, it did not meet the materiality requirement of a fraudulent inducement claim because no "reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question."  Chase Manhattan Bank, 184 F. Supp. 2d at 394 (internal quotation marks and citation omitted).  We concur.

it presumed that Laiq had independently evaluated the "soundness of Bonsai's management and of its business plan."   SAC ¶ 18. Brock's second and third assumptions are even less understandable and there is a clear disconnect between them and the single purported misrepresented claim.  With respect to Brock's second assumption, despite Brock's claim of reliance based on a desire to engage in a business relationship with Laiq, there is no reason to believe that Saad would have known about Brock's unexpressed desire to develop a business association with his father, nor does the SAC claim that Saad made any statements indicating that his father was interested in developing a relationship with Brock.  Moreover, there is no indication that Brock made any overtures to Laiq to establish a business relationship during the two years of negotiations or following Laiq's presence on the Zoom call after the signing of the Contract.  See SAC ¶ 21.  Finally, to the extent that Brock alleges that it was induced to believe that Laiq would help negotiations "proceed smoothly and professionally," the SAC fails once again to allege any facts indicating that Saad represented that his father would facilitate negotiations, and it is clear from the SAC that "negotiations . . . were in fact protracted," in direct contradiction of Brock's purported reason for relying on Saad's representations.  See Raytheon Co. v. AES

Red Oak, LLC, 831 N.Y.S.2d 54, 55 (N.Y. App. Div. 2007) (finding fraudulent inducement counterclaim properly dismissed where justifiable reliance was "clearly contradicted by documentary evidence").

Brock is not only unable to establish reasonable reliance based on the lack of any plausible claim of reliance, but its claims of reliance are also further undermined by its failure to conduct any diligent investigation of Laiq's background during the time that it was allegedly deceived. This failure is particularly significant considering that Brock is a sophisticated party and thus is held to a higher standard. See Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1541 (2d Cir. 1997) ("It is well established that where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."). In particular, where a sophisticated party knows they are "in a position to acquire additional information, but does not inquire, the Second Circuit has found that the duty to exercise minimal diligence renders the investor's reliance unreasonable." Ashland Inc. v. Morgan Stanley, 700 F. Supp. 2d 453, 469 (2d Cir. 2010); Terra Sec. Asa Konkursbo v. Citigroup,

Inc., 740 F. Supp. 2d 441, 450 (S.D.N.Y. 2010) (finding no reasonable reliance where a sophisticated plaintiff failed to conduct minimal diligence regarding information presented in an investment presentation); Siemens Solar Indus. v. Atl. Richfield Co., 673 N.Y.S.2d 674, 674 (1998) ("We agree with the motion court that plaintiff's fraud cause of action is not viable because this sophisticated entity's opportunities to obtain knowledge of the matters that are the subjects of the alleged misrepresentations preclude its claim of reasonable reliance."). In reviewing whether a sophisticated party has conducted the appropriate level of investigation, we look to whether "the information necessary to unmask the alleged fraud [was] accessible to the sophisticated party through minimal diligence," rather than "whether the requisite material was made available to Plaintiffs by Defendants." Terra Sec., 740 F. Supp. 2d at 449.

Whether a party is sophisticated for the purpose of this analysis is determined by looking at "[r]epresentations . . . that it had 'knowledge and experience in financial and business matters and that it could readily evaluate the risks of the transaction.'" Terra Secs., 740 F. Supp. 2d at 449 (quoting Emergent Capital, 343 F.3d at 196). There can be no question that Brock is properly considered to be a sophisticated financial entity. Brock describes

-14-

itself as "an old-line, conservative investment bank" with many members that "joined it after distinguished careers at the highest levels of some of the most prestigious financial, government and academic institutions in the U.S."  SAC ¶ 17.  It "provid[es] strategic business advice and investment banking services to clients."  SAC ¶ 13.

Brock claims that it was entitled to rely on Saad's statement as it was unable to find publicly available information and had no other means to challenge the statement.  See Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss and Strike Portions of the Second Amended Complaint ("Opp'n") at 6 (ECF No. 58).  However, at the outset, there is no indication in the record that Brock conducted any investigation of Laiq's background at any point during the Contract negotiations or prior to the filing of this lawsuit, even when supposedly confronted with conflicting descriptions of Laiq's job experience at Citibank Canada.[5]

Brock attempts to explain this failure by alleging that any

---

[5]    Brock alleges that Saad made two separate statements regarding his father's employment at Citibank Canada.  The first statement was during a conversation in 2018 in which Saad allegedly told Charles Brock that Laiq was "formerly the head of investment banking in Canada for Citibank."  SAC ¶ 14. The second statement was in an email following the signing of the Contract in which Saad described his father as having held "various positions at Citibank Canada including EVP and VP Risk."  Id. ¶ 20.  The discrepancy between these two descriptions alone should have been a red flag for Brock that either triggered "minimal diligence" or a demand to rescind the Contract if Laiq's job history was as central as Brock now claims, which Brock has not done.

attempt would have been futile as "there is no publicly available
information regarding any relationship between Laiq and Citibank."
Opp'n at 7; SAC ¶ 14.  We find the notion that Brock's ability to
investigate was limited to public information on the internet to
be indefensible.  As an "old-line, conservative investment bank"
whose "lifeblood" is "relationships," it is implausible that
Brock's investigation would be stymied by a lack of "publicly
available information," especially when considering the nature of
the alleged misrepresentation.  Just as employers examine
potential employees' job backgrounds by reaching out to
references, former employers, and other contacts in the industry,
an investment bank can conduct an inquiry into a potential client's
job history, particularly where the inquiry was not aimed at the
individual's performance but simply whether he ever held the
position at all.  If Laiq's history was as important as Brock now
claims that it was, Brock should have arranged for a background
check or utilized its members' connections and relationships
within the investment banking industry.[6]  See UST Private Equity
Inv'rs Fund, Inc. v. Salomon Smith Barney, 288 A.D.2d 87, 88 (N.Y.
App. Div. 2001) (finding that a sophisticated plaintiff cannot

---

[6]     A review of Brock's website indicates that at least two of Brock's members
were previously affiliated with Citibank.  See (https://brockcapital.com/meet-
our-experts/).

-16-

establish justifiable reliance where it fails "to make use of the means of verification that were available to it").

Brock's failure to make any inquiry is telling. Even if Brock had conducted an investigation and obtained no additional information, the absence of any information would have signaled to Brock that Bonsai's representations may have been false. Considering that Brock is a sophisticated investment bank that "would not have agreed to provide its services to Saad and Bonsai absent Saad's representations," Opp'n at 3, it was unreasonable as a matter of law to rely on Saad's representations without having "investigate[d] the information available to them with the care and prudence expected from people blessed with full access to information." Hirsch v. du Pont, 553 F.2d 750, 763 (2d Cir. 1977).[7]   Thus, we grant defendants' motion to dismiss the fraudulent inducement claim in its entirety.

## II. Motion to Strike

In addition to its motion to dismiss the first cause of action, Bonsai also requests that the Court strike four categories of allegations and statements within the SAC. See Mot. at 12-25.

---

[7]    Given that we are granting Bonsai's motion to dismiss based on Brock's failure to plead reasonable reliance, we do not address Bonsai's additional arguments that the fraud claim should be dismissed as duplicative of Brock's breach of contract claim and for failure to plead with the required level of specificity under Rule 9(b).

The first category concerns allegations regarding purported fraud conducted by Laiq Siddiqui.  The second category concerns allegations of fraud on the Court.  The third category consists of allegations of violations of Rule 11 by counsel for Bonsai, and the fourth category consists of statements throughout the SAC that instruct the jury as to the proper conclusions or inferences that should be drawn from the alleged facts.

> *a. Allegations concerning Laiq Siddiqui*

Having granted Bonsai's motion to dismiss regarding Brock's fraudulent inducement claim, we first turn to Bonsai's motion to strike the allegations concerning Laiq Siddiqui.  To be clear, we do not suggest that dismissing the fraudulent inducement claim is in and of itself sufficient to warrant striking certain of the allegations against Laiq Siddiqui.  Central to our decision to grant this application is the fact that Laiq is not a party to this case and yet, without proof, plaintiffs have charged Laiq with embarking on a scheme to defraud the local business community and the public.  Such allegations, which are untethered to any cause of action on behalf of the supposed victims, are thus "immaterial" and "scandalous" and have no proper place in this complaint.  See Fed. R. Civ. P. 12(f).  Accordingly, we will strike the allegations in paragraphs 9, 10, and 11 that reference a

"fraudulent scheme" perpetrated by Laiq, along with the headlines "The Siddiqui Family Myth" and "Brock is Ensnared in Laiq's Fraudulent Scheme." <u>See</u> First Sobel Decl. Ex. 5 (ECF No. 55-5).

   *b. Allegations concerning fraud on the Court*

   The SAC, ¶¶ 74-87, in a section titled "Bonsai's Extortionate Threat to Brock," recites pre-suit (but post threatened litigation) statements allegedly made by defendants' counsel to plaintiffs' counsel as a predicate to a claim that Bonsai's assertion of a counterclaim for fraud in its answer "constituted a fraud upon this Court." Despite the serious nature of such a claim, Brock seeks no related relief.

   Without moving to dismiss the fraud on the Court claim, Bonsai moves to strike the allegations as statements protected under Federal Rule of Evidence 408 and as "immaterial" and "scandalous" pursuant to Rule 12(f). While the Court is sympathetic to Bonsai on both arguments, Rule 12(f) was not intended to be a substitute for Rule 12(b)(6) and Rule 408 is a rule of evidence.[8] Accordingly, we deny defendants' request to strike these statements.

   *c. Allegations of Rule 11 violations and instructions to the jury*

---

[8]    Bonsai has raised the additional issue of whether counsel for both parties would become fact witnesses and ultimately disqualified were these allegations to remain in the SAC. <u>See</u> Mot. at 16-17. This issue can be addressed if and when defendants move to dismiss the fraud on the court on the merits.

Defendants also move to strike allegations of Rule 11 violations and the multiple jury instructions in the SAC. Plaintiffs' counsel's decision to include in the SAC commentary on certain of defendants' defenses, opining that they are "frivolous," advanced in "bad faith" and in violation of Rule 11 (without compliance with the Rule), see SAC ¶ 89, and to propose jury instructions in his complaint is highly unusual and unproductive. Specifically, despite acknowledging that the jury will not receive a copy of the SAC and no doubt well aware that Brock will have the opportunity to submit its proposed jury instructions at the appropriate time, Brock persists in defending its inclusion of instructions to jurors. As out of place and counter productive as these allegations are, none rises to the level of the standard of Rule 12(f) such that granting defendants' motion in this regard is warranted.

## CONCLUSION

Accordingly, for the reasons stated above, we grant Bonsai's motion to dismiss in its entirety and the motion to strike in part. The Clerk of the Court is respectfully directed to close the motion pending at ECF No. 53.

**SO ORDERED.**

Dated:      New York, New York
            June 7, 2022

                                    NAOMI REICE BUCHWALD
                            UNITED STATES DISTRICT JUDGE